IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | | |
|---|---|---|
| LORRAINE WHITING, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 3:13cv393 (DJN) |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Commissioner of Social Security, | ) | |
| Defendant. | ) | |
| | ) | |

MEMORANDUM OPINION

Lorraine Whiting ("Plaintiff") is 51 years old and has previously worked as a grill cook, an inventory counter, a stock clerk, a mail handler and a factory line assembler. On July 29, 2010, Plaintiff applied for Disability Insurance Benefits ("DIB") under the Social Security Act ("Act") alleging lupus, connective tissue disorder, depression and numbness in her toes. Plaintiff's claim was presented to an administrative law judge ("ALJ"), who denied Plaintiff's request for benefits. The Appeals Council subsequently denied Plaintiff's request for review.

Plaintiff now challenges the ALJ's denial of benefits, arguing that the ALJ erred in assessing her credibility and the credibility of her family and friend. (Pl.'s Mem. in Supp. of Mot. for Summ. J. ("Pl.'s Mem.") (ECF No. 10) at 17-29.) Plaintiff seeks judicial review of the ALJ's decision in this Court pursuant to 42 U.S.C. § 405(g). This matter is now before the Court by consent of the parties pursuant to 28 U.S.C § 636(c)(1) on the parties' cross motions for summary judgment, which are now ripe for review. For the reasons set forth herein, the Court DENIES Plaintiff's Motion for Summary Judgment (ECF No. 9), GRANTS Defendant's Motion for Summary Judgment (ECF No. 11); and AFFIRMS the final decision of the Commissioner.

## I. BACKGROUND

Because Plaintiff challenges the ALJ's credibility assessments, Plaintiff's educational and work history, medical history, consulting physician's opinions, reported activities of daily living and hearing testimony are summarized below.

A.     Plaintiff's Education and Work History

Plaintiff completed school through twelfth grade. (R. at 33.) Plaintiff previously worked as a grill cook, an inventory counter, a stock clerk, a mail handler and a factory line assembler. (R. at 34-37, 229.) Until May 30, 2008, Plaintiff worked as a full-time grill cook for Compass Group USA. (R. at 34, 151.) Plaintiff stopped working, because her family moved to Fredericksburg shortly after the birth of her grandson. (R. at 151.)

B.     Plaintiff's Medical Records

1.     Dr. Maria Darland

On April 18, 2010, Plaintiff first consulted rheumatologist Maria Darland, M.D. about her pain, muscle tenderness and insomnia. (R. at 499.) In a Multi-Dimensional Health Assessment Questionnaire, Plaintiff indicated that she had only mild difficulty with tasks such as dressing herself, getting in and out of bed, walking outdoors and washing her body. (R. at 499.) However, Plaintiff was unable to walk two miles or participate in sports, and she indicated feeling stiff each morning when she awoke. (R. at 499.) On a scale of 100, with 100 being very poor and zero being very well, Plaintiff ranked her overall health condition as 60. (R. at 499.) Likewise on a similar scale with 100 being very bad, Plaintiff listed her pain level as 70 and her fatigue level as 75. (R. at 499.) On May 18, 2010, after a physical evaluation and laboratory testing, Dr. Darland diagnosed Plaintiff with mixed connective tissue disease ("MCTD")

2

(ribonucleoprotein complex). (R. at 498.) This diagnosis stemmed from Dr. Darland's assessment that Plaintiff's symptoms, including muscle soreness, insomnia and joint swelling, were consistent with lupus. (R. at 501.) On July 16, 2010, Dr. Darland concluded that Plaintiff suffered from systemic lupus erythematosus, as well as MCTD. (R. at 492.)

From August 26, 2010 through October 21, 2011, Dr. Darland treated Plaintiff for MCTD issues on multiple occasions. (R. at 490, 664, 769, 775, 778, 781, 789, 792.) Dr. Darland prescribed methotrexate and prednisone for Plaintiff, and her MCTD issues fluctuated in severity and frequency. (R. at 815.) On October 21, 2011, Dr. Darland opined that Plaintiff's MCTD was "much better." (R. at 775.) During a December 1, 2011 visit, Dr. Plaintiff experienced a MCTD flare-up. (R. at 769)

2.     Dr. Joseph Cherian

On May 6, 2010, Plaintiff sought treatment for pain from her primary care physician, Joseph Cherian, M.D. (R. at 584.) Dr. Cherian examined Plaintiff and found normal breathing, muscle and motor strength, reflexes, gait and mood. (R. at 587-588.) Dr. Cherian indicated that Plaintiff suffered from chronic pain, unspecified backache, hypertension, hypercholesterolemia, lumbago and lymphocytosis. (R. at 589.) Dr. Cherian explained the importance of Plaintiff seeking non-pharmacological treatment, such as yoga, stretching, regular aerobic exercise, weight loss and a healthy diet to alleviate her pain. (R. at 589-90, 682-83.) On May 12, 2010, Dr. Cherian noted that Plaintiff's breathing, muscle strength, reflexes, gait and mood appeared normal. (R. at 576.) Between June and August, Plaintiff consulted with Dr. Cherian, and although Plaintiff reported pain and inflammation, each visit yielded normal observations by Dr. Cherian. (R. at 547-48, 555-56, 563-64, 571-72.)

3

On November 2, 2010, Dr. Cherian assessed that medications had lessened Plaintiff's back and shoulder pain and that her swelling was less severe. (R. at 677-78.) Dr. Cherian again encouraged Plaintiff to exercise. (R. at 683.) During several subsequent visits beginning in December 2010 and continuing through February 2011, Dr. Cherian noted that Plaintiff demonstrated normal breathing, muscle strength, gait and reflexes, and while Plaintiff's mood was depressed, she remained stable with medication. (R. at 696-98, 706-07, 709, 711-12, 717-19, 721-22, 1067-78, and 1080-81.) On October 19, 2011, Plaintiff reported occasional flare-ups, but Dr. Cherian noted improvement in several of Plaintiff's symptoms. (R. at 852-58.)

### 3.     Dr. Robert Bloom

On February 3, 2011, pulmonary specialist Robert Bloom, M.D. evaluated Plaintiff and determined that Plaintiff had low normal pulmonary function. (R. at 833.) Dr. Bloom noted that Plaintiff had smoked one pack of cigarettes per day for twenty-five years. (R. at 832.) During the examination, Plaintiff exhibited normal lung volumes and normal diffusing capacity. (R. at 833.) Dr. Bloom assessed that Plaintiff demonstrated no evidence of interstitial lung disease or shrinking lung syndrome associated with lupus. (R. at 833.) Dr. Bloom wrote a letter to Dr. Darland, Plaintiff's rheumatologist, stating that "it is absolutely essential that [Plaintiff] stop smoking." (R. at 833.)

Dr. Bloom saw Plaintiff on October 13, 2011, for a follow-up visit. (R. at 820.) A chest radiograph showed Plaintiff's lung fields to be almost clear, but Dr. Bloom noted minimally increased interstitial markings, which he attributed to Plaintiff's history of smoking. (R. at 820-21.) Dr. Bloom assessed very mild interstitial lung disease, esophageal reflux and low-grade

4

depression. (R. at 821.) Dr. Bloom again observed that Plaintiff's lung function was normal and that Plaintiff showed no evidence of progressive pulmonary disease. (R. at 821.)

        4.     Physical Therapy

On May 11, 2011, Plaintiff began physical therapy to address her back pain. (R. at 1131.) Before starting the therapy, Plaintiff described constant back pain beginning in 2004 due to her employment, which involved production work and lifting. (R. at 1131.) On a scale of one to ten, with one being the least pain, Plaintiff rated her pain as a six out of ten at worst and a three out of ten at best. (R. at 1132.) Plaintiff had received physical therapy in the past, but she indicated that an "episode" the previous month had caused her extreme pain. (R. at 1131.) Plaintiff regularly attended physical therapy during May and June of 2011. (R. at 1091, 1094, 1097, 1100, 1103, 1106, 1109, 1113, 1116, 1122, 1125, 1128.) Plaintiff's final session occurred on June 6, 2011, at which point she had to stop treatment because of insurance limitations. (R. at 1096.) In her final physical therapy report, Plaintiff indicated that she could lift 10-15 pounds, carry a gallon of milk from her car to her house, sit for more than 60 minutes, stand for 51-60 minutes, and walk on a treadmill for 0-10 minutes. (R. at 1091). Plaintiff's physical therapist described that Plaintiff's condition at the time of discharge as "good" and encouraged Plaintiff to continue a home program therapy. (R. at 1092.)

        C.     State Agency Physicians

State agency physician Luc Vinh, M.D. reviewed Plaintiff's medical records and determined that Plaintiff had no manipulative, visual, communicative or environmental limitations and no severe mental impairments. (R. at 70-71, 81.) Dr. Vinh opined that Plaintiff could occasionally lift and/or carry 20 pounds and frequently lift and/or carrying 10 pounds. (R.

at 80.) Plaintiff could stand and/or walk for six hours in an eight-hour day and sit for six hours in an eight-hour day. (R. at 80.) Dr. Vinh further determined that Plaintiff had no limitation in her ability to push or pull and could occasionally climb, balance, stoop, kneel, crouch and crawl. (R. at 80-81.) State agency physician R.S. Kadian, M.D. reached the same conclusions. (R. at 68-71.)

State agency mental health professionals Yvonne Evans, Ph.D. and Nicole Sampson, Ph.D. also reviewed Plaintiff's medical records and opined that Plaintiff had only mild restrictions on daily activities, mild difficulties in social functioning, mild difficulties in maintaining concentration, persistence or pace and experienced no episodes of decompensation of an extended duration. (R. at 68, 78-79.)

D.      Plaintiff's Testimony

On February 13, 2012, Plaintiff, represented by counsel, testified at a hearing before an ALJ. (R. at 30.) Plaintiff indicated that she graduated from high school and last worked in May 2008. (R. at 33-34.) Plaintiff stated that she lived with her husband, her youngest daughter, her oldest daughter and her four-year-old grandson. (R. at 46.) Plaintiff explained that her husband, who retired from the military, had supported her since she stopped working in 2008. (R. at 37.) Plaintiff testified that her past employment required her to lift between 10 and 20 pounds. (R. at 34-37.)

When asked what kept her from working, Plaintiff testified that she dealt with "chronic pain" in her back, shoulders, ankles, knees and hips. (R. at 38.) Plaintiff cited depression as another factor preventing her from working, but she took Zoloft and attended group therapy. (R. at 44.) Plaintiff experienced pain on a daily basis with the most severe pain located on the right

side of her body. (R. at 38.) On a scale of one to ten, with ten requiring an emergency room visit, Plaintiff described her pain as a five or six without medicine, although she typically took pain medication four to five times per day. (R. at 39-39.) The medication often made Plaintiff sleepy, but it did not knock her out completely. (R. at 55.) Due to the pain, Plaintiff avoided bending over and lifting, and she refrained from walking long distances. (R. at 39-40.) Plaintiff estimated that she could walk 10 minutes on a treadmill before needing to stop. (R. at 40.) Once or twice each month, Plaintiff experienced "flare ups" that affected her entire body and prevented her from wanting to get out of bed. (R. at 41.)

Plaintiff testified that she could hold and write with a pen, but larger tasks such as opening a jar or bending to put on shoes caused discomfort. (R. at 42-43.) After sitting for periods of more than an hour or two, Plaintiff had to get up and move around. (R. at 47.) Plaintiff cooked at least three days per week and cleaned the house. (R. at 46.) She drove for trips of 30 minutes or less to the store or to the doctor's office. (R. at 46-48.)

E.    Vocational Expert Testimony

On February 13, 2012, a vocational expert ("VE') testified that jobs existed for an individual of Plaintiff's age, education, and work history, who was limited to occasionally lifting 20 pounds, who would need to avoid exposure to extreme heat and cold, and who would have a sit/stand option exercised at their discretion. (R. at 58-60.) Jobs meeting these characteristics existed in significant numbers in both the national and Virginia economies. (R. at 56-57.) When questioned by Plaintiff's counsel, the VE said that allowable absenteeism for someone in these types of jobs would be fewer than two days per month. (R. at 61.)

7

F.     Third Party Witnesses

On August 22, 2010, Plaintiff's daughter, Sherrese L. Whiting, completed a third party function report. (R. at 179-81.) She indicated that Plaintiff experienced difficulty sleeping due to her pain. (R. at 179-81.) Plaintiff cared for her grandson, cleaned, did laundry and cooked. (R. at 179-81.) Plaintiff's hobbies included watching television, reading the Bible and talking on the telephone. (R. at 183-84.) Since the onset of her condition, Plaintiff cooked less frequently, no longer spent much time outside and had difficulty walking. (R. at 181-182, 185.) Plaintiff attended church twice weekly, shopped once per week for roughly an hour and experienced no problems handling money or paying bills. (R. at 183-84.)

On December 20, 2011, Ms. Whiting wrote a letter further describing Plaintiff's condition. (R. at 843-33.) Plaintiff suffered from pain and depression, which caused Plaintiff to have difficulty lifting, bending and walking. (R. at 843-44.) Plaintiff also experienced swelling of her joints and trouble concentrating or remembering what she was saying. (R. at 843-44.)

On January 2, 2012, Plaintiff's lifelong friend, Shenna H. Young. wrote a letter to Plaintiff's counsel in which she described a "decline" in Plaintiff's emotional and physical health. (R. at 225.) Specifically, Ms. Young noted that Plaintiff experienced pain and fatigue when walking and climbing stairs. (R. at 225.) Also, Plaintiff's depression caused Plaintiff to socially withdraw. (R. at 225.)

On January 4, 2012, Plaintiff's husband, James W. Whiting, wrote a letter in which he noted obvious changes in Plaintiff's condition over the past three years. (R. at 226.) Plaintiff experienced aches and pains across her entire body, particularly while doing chores. (R. at 226.) Her husband noted that Plaintiff's feet and hands swelled after extended periods in the car and

8

Plaintiff limped to the bedroom after climbing the stairs. (R. at 226.) Mr. Whiting explained that Plaintiff struggled to bend over and occasionally yelled out in pain after lifting a laundry basket. (R. at 226.)

## II. PROCEDURAL HISTORY

On July 29, 2010, Plaintiff filed an application for DIB due to disability from lupus, connective tissue disorder, depression and numbness in her toes, with a revised alleged onset date of April 1, 2010. (R. at 128, 145-46, 151.) Plaintiff's initial claim for DIB was denied on October 7, 2010, and her petition for reconsideration was denied on February 23, 2011. (R. at 84, 92.) Plaintiff filed a written request for a hearing on March 4, 2011, and appeared with counsel before an ALJ on February 13, 2012. (R. at 99, 30.) On March 12, 2012, the ALJ denied claimant benefits, finding that Plaintiff did not meet the definition of disability under the Act and that she possessed the adequate RFC to perform one of several jobs that exist in significant numbers in the national economy. (R. at 20.) On April 17, 2013, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court. (R. at 1.)

## III. QUESTIONS PRESENTED

1. Did the ALJ apply the proper standard of law when assessing Plaintiff's credibility?
2. Does substantial evidence support the ALJ's assessment of Plaintiff's and third-party witnesses' credibility?

## IV. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court is limited to determining whether substantial evidence in the record supports the Commissioner's decision and whether the proper legal standards were applied in evaluating the evidence. *Hancock v.*

*Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (citing *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)).  Substantial evidence is more than a scintilla, is less than a preponderance and is the kind of relevant evidence a reasonable mind could accept as adequate to support a conclusion. *Id.*; *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

To determine whether substantial evidence exists, the Court must examine the record as a whole, but may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (citation and internal quotation marks omitted); *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589).  In considering the decision of the Commissioner based on the record as a whole, the Court must "take into account whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951)) (internal quotation marks omitted). The Commissioner's findings as to any fact, if substantial evidence in the record supports the findings, are conclusive and must be affirmed. *Hancock*, 667 F.3d at 476 (citation omitted). While the standard is high, if substantial evidence in the record does not support the ALJ's determination or if the ALJ has made an error of law, the district court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A sequential evaluation of a claimant's work and medical history must occur to determine if a claimant is eligible for benefits. 20 C.F.R. §§ 416.920, 404.1520; *Mastro*, 270 F.3d at 177.  An ALJ conducts the analysis for the Commissioner, and a court must examine that process on appeal to determine whether the ALJ applied the correct legal standards and whether

10

substantial evidence on the record supports the resulting decision of the Commissioner. *See Mastro*, 270 F.3d at 176-77.

The first step in the sequence is to determine whether the claimant was working at the time of the application and, if so, whether the work constituted "substantial gainful activity" ("SGA"). 20 C.F.R. §§ 416.920(b), 404.1520(b). SGA is work that is both substantial and gainful as defined by the Agency in the C.F.R. Substantial work activity is "work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b). Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572(c). If a claimant's work constitutes SGA, the analysis ends and the claimant must be found "not disabled," regardless of any medical condition. *Id.*

If the claimant establishes that she did not engage in SGA, the second step of the analysis requires her to prove that she has "a severe impairment . . . or combination of impairments which significantly limits [her] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c); *see also* 20 C.F.R. § 404.1520(c). To qualify as a severe impairment that entitles one to benefits under the Act, it must cause more than a minimal effect on one's ability to function. 20 C.F.R. § 404.1520(c).

At the third step, if the claimant has an impairment that meets or equals an impairment listed in 20 C.F.R. part 404, subpart P, appendix 1 (listing of impairments) and lasts, or is

11

expected to last, for twelve months or result in death, it constitutes a qualifying impairment, and the analysis ends. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the impairment does not meet or equal a listed impairment, then the evaluation proceeds to the fourth step in which the ALJ must determine whether the claimant can return to her past relevant work[1] based on an assessment of the claimant's residual functional capacity ("RFC")[2] and the "physical and mental demands of work [the claimant] has done in the past." 20 C.F.R. §§ 416.920(e), 404.1520(e). If such work can be performed, then benefits will not be awarded. *Id.* The burden of proof remains with the claimant through step four of the analysis, such that she must prove that her limitations preclude her from performing her past relevant work. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Hancock*, 667 F.3d at 472.

However, if the claimant cannot perform her past work, the burden then shifts to the Commissioner at the fifth step to show that, considering the claimant's age, education, work experience and RFC, the claimant is capable of performing other work that is available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f), 404.1520(f); *Powers v. Apfel*, 207 F.3d 431, 436 (7th Cir. 2000) (citing *Yuckert*, 482 U.S. at 146 n.5). The Commissioner can carry her burden in the final step with the testimony of a VE. When a VE is

---

[1]     Past relevant work is defined as SGA in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. §§ 416.965(a), 404.1565(a).

[2]     RFC is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR-96-8p. When assessing the RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (*i.e.,* 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. *Id.*

called to testify, the ALJ's function is to pose hypothetical questions that accurately represent the claimant's RFC based on all evidence on record and a fair description of all of the claimant's impairments, so that the VE can offer testimony about any jobs existing in the national economy that the claimant can perform. *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). Only when the hypothetical posed represents all of the claimant's substantiated impairments will the testimony of the VE be "relevant or helpful." *Id.* If the ALJ finds that the claimant is not capable of SGA, then the claimant is found to be disabled and is accordingly entitled to benefits. 20 C.F.R. §§ 416.920(f)(1), 404.1520(f)(1).

## V. ANALYSIS

### A.   The ALJ's Decision

On July 12, 2010, the ALJ issued a written opinion determining that Plaintiff was not disabled under the Act. (R. at 20.) The ALJ followed the five-step sequential evaluation process in analyzing whether Plaintiff was disabled. (R. at 12-13.) First, the ALJ determined that Plaintiff had not engaged in SGA since the alleged onset date. (R. at 14.) At step two, the ALJ determined that Plaintiff had severe impairments of connective tissue disorder (systemic lupus erythematosus), mild interstitial lung disease, chronic pain or a pain disorder and degeneration of the lumbar spine. (R. at 14-15.) At step three, however, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of one of the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1. (R. at 15-16.)

At step four, the ALJ determined that Plaintiff retained the RFC to perform a:

full range of light work . . . including all aspects of sitting, standing, and walking at this level, compromised by a sit and stand option . . . no climbing of ladders, ropes, or scaffolds; occasional balancing, stooping, kneeling, crouching, and crawling; and frequent bilateral handling and

13

fingering. Other non-exertional limitations include avoiding moderate exposure to either the extreme heat or extreme cold, and avoiding concentrated exposure to hazards, such as unprotected heights and moving machinery.

(R. at 16.) In reaching this conclusion, the ALJ considered objective medical evidence and opinion evidence. (R. at 16.) The ALJ followed a two-step analysis of whether the medical determinable physical symptoms could reasonably be expected to produce Plaintiff's pain and symptoms, and, if so, the extent to which the symptoms limited Plaintiff's functioning. (R. at 16-17.) The ALJ concluded that, based on the evidence, Plaintiff's impairment could reasonably be expected to cause some of the alleged symptoms, but found Plaintiff's testimony and statements by Plaintiff's third parties concerning the intensity, persistence and limiting effects of the symptoms to lack credibility due to inconsistency and a lack of objective support. (R. at 17-18.) The ALJ found that Plaintiff would be unable to perform any past relevant work due to the physical requirements of those prior jobs. (R. at 20.)

At step five, however, the ALJ found that Plaintiff could perform a significant number of other jobs that existed in the local and national economy. (R. at 20-21.) Plaintiff's RFC assessment provided for the full range of light work as defined in 20 C.F.R. 404.1567(b). (R. at 16.) The ALJ evaluated the VE's testimony and Plaintiff's age, education and work experience, and concluded that with some accommodations Plaintiff could fulfill light exertional level unskilled jobs, such as unarmed security guard, office helper or information clerk. (R. at 21.) As such, the ALJ found that Plaintiff was not disabled under the Act. (R. at 21.)

Plaintiff moves for a finding that she is entitled to benefits as a matter of law. (Pl.'s Mem. at 5.) Specifically, Plaintiff challenges the ALJ's assessments of Plaintiff's credibility and the credibility of lay person witnesses. (Pl.'s Mem. at 4.) Defendant asserts that substantial

evidence supports the ALJ's decision. (Def.'s Mem. in Supp. of Mot. for Summ. J. ("Def.'s Mem.") (ECF No. 11) at 13.)

      B.     The ALJ applied the proper standard of law when assessing Plaintiff's credibility.

     Plaintiff argues that the ALJ erred in applying the wrong standard of law when assessing Plaintiff's credibility, because the ALJ's explanation lacks clarity and adequacy. (Pl.'s Mem. at 17-21.) Defendant contends that the ALJ applied the correct two-step analysis. (Def.'s Mem. at 14.)

     In evaluating a claimant's subjective symptoms, the ALJ must follow a two-step analysis. *Craig*, 76 F.3d at 594; *see also* SSR 96-7p; 20 C.F.R. §§ 404.1529(a), 416.929(a). The first step is to determine whether there is an underlying medically determinable physical or mental impairment or impairments that reasonably could produce the individual's pain or other related symptoms. *Craig*, 76 F.3d at 594; SSR 96-7p, at 1-3. In doing so, the ALJ must consider all of the medical evidence in the record. *Craig*, 76 F.3d at 594-95; SSR 96-7p, at 5 n.3; *see also* SSR 96-8p, at 13.

     If the underlying impairment reasonably could be expected to produce the individual's pain, then the second part of the analysis requires the ALJ to evaluate a claimant's statements about the intensity and persistence of the Plaintiff's impairments and the extent to which it affects the individual's ability to work. *Craig*, 76 F.3d at 595. The ALJ's evaluation must take into account "all the available evidence," including a credibility finding of the claimant's statements regarding the extent of the symptoms. *Id.* The ALJ must provide specific reasons for the weight given to the individual's statements. *Id.* at 595-96; SSR 96-7p, at 5-6, 11.

Here, the ALJ indeed applied the correct legal standard.  The ALJ determined that Plaintiff's underlying medical impairments could reasonably be expected to produce some of her alleged symptoms.  (R. at 18.)  However, the ALJ did not find Plaintiff's statements concerning the intensity, persistence and limiting effects of her condition credible to the extent they were inconsistent with Plaintiff's ability to perform a full range of light work with limitations.  (R. at 16.)  The ALJ noted that Plaintiff's stated activity level generally "demonstrate[s] significant functional abilities."  (R. at 17.)

In making this determination, the ALJ considered all evidence regarding Plaintiff's symptoms in compliance with SSR 96-7p, including Plaintiff's medical records, Plaintiff's testimony and third party statements.  (R. at 16-20.)  The ALJ discredited Plaintiff's statements, because Plaintiff's lupus symptoms flared intermittently rather than constantly, and the records demonstrate improvement.  (R. at 18-19.)  Although Plaintiff alleged total disability and pain, Plaintiff could perform some activities of daily living, doctors opined that she could perform light work and Plaintiff's therapy notes indicated that she could perform during physical therapy.  (R. at 18-19.)  The ALJ also noted that Plaintiff relied only upon medication to relieve her pain, even though doctors suggested exercises.  (R. at 19.)  As such, the ALJ used the proper two-step process when assessing Plaintiff's credibility and provided a proper explanation for her determination.  Therefore, the ALJ applied the correct standard of law.

C. Substantial evidence supports the ALJ's assessment of credibility.

Plaintiff argues that the ALJ's assessment of Plaintiff's credibility lacks substantial evidence.  (Pl.'s Mem. at 22-29.)  Plaintiff also complains that the evidence fails to support the ALJ's assessment of the credibility of her daughter, husband and friend's statements.  (Pl.'s

16

Mem. at 2-3.)  Defendant contends that the ALJ did not err in her assessment.  (Def.'s Mem. at 17.)

    This Court must give great deference to the ALJ's credibility determinations. *See Eldeco, Inc. v. NLRB*, 132 F.3d 1007, 1011 (4th Cir.1997) ("Reviewing courts owe deference to factual findings, assessing them only to determine whether they are supported by substantial evidence."); *see also* Hancock, 667 F.3d at 476 ("We are not at liberty to 'reweigh conflicting evidence . . . or substitute our judgment for that of the [ALJ].'") (citation omitted).  The Fourth Circuit has determined that "[w]hen factual findings rest upon credibility determinations, they should be accepted by the reviewing court absent 'exceptional circumstances.'" *Eldeco, Inc.*, 132 F.3d at 1011 (quoting *NLRB v. Air Prods. & Chems.*, Inc., 717 F.2d 141, 145 (4th Cir.1983)).  Therefore, this Court must accept the ALJ's factual findings and credibility determinations unless "'a credibility determination is unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all.'" *Id.* (quoting *NLRB v. McCullough Envtl. Servs., Inc.*, 5 F.3d 923, 928 (5th Cir.1993)).  As long as substantial evidence supports the conclusion, this Court must give great deference to the ALJ's credibility determinations. *Id*

        1.  Plaintiff's credibility

    It is well established that Plaintiff's subjective allegations of pain are not, alone, conclusive evidence that Plaintiff is disabled. *Mickles v. Shalala*, 29 F.3d 918, 919 (4th Cir. 1994).  The Fourth Circuit has determined that "subjective claims of pain must be supported by objective medical evidence showing the existence of a medical impairment which could

17

reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." *Craig*, 76 F.3d at 591.

As determined above, the ALJ applied the correct standard in finding that Plaintiff's impairments could be expected to cause some of her symptoms, but Plaintiff's statements concerning the intensity, persistence and limiting effect of the symptoms lacked credibility. The ALJ reasoned that Plaintiff's assertions lack the support of the objective medical evidence and Plaintiff's physical therapy notes, and Plaintiff's stated activity level generally "demonstrate significant functional abilities." (R. at 16-18.) As long as substantial evidence in the record supported the conclusion, this Court must give great deference to the ALJ's credibility determinations. *Eldeco*, 132 F.3d at 101.

Objective medical evidence supports the ALJ's finding. Dr. Cherian repeatedly found that Plaintiff's breathing, muscle strength, gait, mood and reflexes were normal. (R. at 555-56, 563-64, 571-72, 587-88, 681-82, 700-02, 711, 721-22, 860-62, 881-82, 901-02, 922, 942, 963, 981, 1001, 1018-19, 1038-39, 1054, 1068-69, 1080-81.) Similarly, Dr. Darland regularly treated Plaintiff's pain from lupus and noted that Plaintiff was doing "much better" despite intermittent MCTD episodes. (R. at 775, 769, 852-58, 861.) Additionally, Plaintiff did not heed instructions to exercise from her treating physician, Dr. Cherian. (R. at 589-90, 679, 682-83.) Furthermore, state agency physicians assessed that Plaintiff could engage in light work activity. (R. at 70-71, 80-81.)

Plaintiff's physical therapy records did not support her claim of disabling pain. (R. at 1091, 1094, 1097, 1100, 1103, 1106, 1109, 1113, 1116, 1122, 1125, 1128.) The notes indicate that Plaintiff could lift 10-15 pounds, carry a gallon of milk from her car to her house, sit for

18

more than 60 minutes, stand for 51-60 minutes, and walk on a treadmill for 0-10 minutes. (R. at 1091.)

Finally, Plaintiff's own testimony provides support for the ALJ's finding, as Plaintiff indicated she could still care for grandson, did housework and cared for herself. (R. at 170-177.) On a scale of one to ten, with ten requiring an emergency room visit, Plaintiff described her pain as a five or six without medicine, although she typically took pain medication four to five times per day. (R. at 39.) Plaintiff could hold and write with a pen. (R. at 42-43.) Therefore, substantial evidence supports the ALJ's assessment of Plaintiff's credibility.

### 2. Lay Witness Credibility

Plaintiff argues that the ALJ erred in assessing the credibility of her third party lay witnesses, including Plaintiff's daughter, husband and longtime friend. (Pl.'s Mem. at 17-20.) Defendant contends that substantial evidence supports the ALJ's determination. (Def.'s Mem. at 14.)

The third party sources included a functioning report and letter from Plaintiff's daughter, a letter from Plaintiff's husband and a letter from Plaintiff's longtime friend, which describe Plaintiff's condition. (R. at 178, 226.) The ALJ found the third party lay witness testimony not to be credible to the extent that Plaintiff is incapable of all work, because their statements were inconsistent with the medical records and Plaintiff's functioning. (R. at 18.) Furthermore, the lay witnesses' descriptions of Plaintiff's functional ability was inconsistent with a finding of disability. (R. at 18.) Again, as long as substantial evidence in the record supports the findings, this Court must give great deference to the ALJ's credibility determinations. *Eldeco*, 132 F.3d at 101.

19

Moreover, these statements support a finding that Plaintiff maintains functional ability. Plaintiff's daughter noted that Plaintiff had no problem with personal care, prepared meals several times per week and performed household chores such as laundry, ironing and cleaning. (R. at 181.) Plaintiff cared for her grandson by feeding, bathing and reading to him. (R. at 179.) Plaintiff's daily activities included watching television, reading the Bible and talking on the telephone. (R. at 183-84.) Plaintiff still attended church twice weekly, shopped once per week for roughly an hour and experienced no problems handling money or paying bills. (R. at 843-44.) Plaintiff's husband confirmed that Plaintiff could engage in these household chores. (R. at 226.)

Plaintiff's testimony further supports the ALJ's determination. She cooked at least three days per week, she cleaned the house, and she drove for trips of 30 minutes or less to the store or to the doctor's office. (R. at 46.) Plaintiff could walk for 10 minutes and could hold and write with a pen. (R. at 40, 42-43.) Dr. Vinh and Dr. Kadian opined that Plaintiff could lift or carry 20 pounds occasionally and 10 pounds frequently. (R. at 68, 80.) They further opined that Plaintiff could push or pull an unlimited amount and walk and/or stand six hours during a work day. (R. at 68, 80.) No medical evidence exits to indicate that Plaintiff experienced total disability. Therefore, substantial evidence supports the ALJ's assessment of the lay witnesses' credibility.

## VI. CONCLUSION

Based on the foregoing analysis, the Court DENIES Plaintiff's Motion for Summary Judgment (ECF No. 9); GRANTS Defendant's Motion for Summary Judgment (ECF No. 11);

and AFFIRMS the final decision of the Commissioner.

Let the Clerk file this Opinion electronically and notify all counsel of record.

An appropriate Order shall issue.

                                                       /s/

David J. Novak
United States Magistrate Judge

Richmond, Virginia
Dated: May 29, 2014